**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| THE BELOVED CHURCH, an Illinois Not-for-Profit Corporation, and PASTOR STEPHEN CASSELL, an individual, | ) ) ) | No. |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAY ROBERT PRITZKER, Governor of the State of Illinois, DAVID SNYDERS, Sheriff of Stephenson County, Illinois, STEVE SCHAIBLE, Chief of Police of the Village of Lena, Illinois, and CRAIG BEINTEMA, Administrator of the Department of Public Health of Stephenson County, Illinois, in their official capacities, | ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT**

Plaintiffs, The Beloved Church of Lena, Illinois, and Pastor Stephen Cassell, by and through their counsel, the Thomas More Society, complain of Defendants Jay Robert Pritzker, David Snyders, Steve Schaible, and Craig Beintema, as follows:

## I.    Introduction

1.      Fear of the coronavirus epidemic has gripped Illinois, the nation, and the world. In response to the initial surge in coronavirus cases, numerous states imposed "stay-at-home" orders, in order to "flatten the curve" of the spread of the virus. Due to the unified efforts of the American people, the curve has flattened nationally, and in Illinois.

1

2.      In many states, these stay-at-home orders protected the constitutional rights of churches and religious believers during the coronavirus epidemic, but not so in the Land of Lincoln.

3.      Defendant Pritzker in his orders declared churches and church ministries "non-essential" and commanded them to shut down.[1] Pritzker has forbidden congregants from leaving their homes to attend church or church ministries. On the eve of Easter, the holiest day on the Christian calendar, Pritzker expressly prohibited even no-contact, drive-in services in Illinois church parking lots. At the same time, he declared a laundry list of businesses to be "essential," from liquor stores to lawyers to landscapers.

4.      Pritzker's statements and actions during the coronavirus epidemic demonstrate an illegal and discriminatory hostility to religious practice, churches, and people of faith. He has flagrantly violated the fundamental religious liberties of Illinoisans, in violation of the First Amendment's Free Exercise clause and parallel provisions of the Illinois Constitution and statute.

5.      In recent days, a number of law enforcement officials (*e.g.*, Douglas County Sheriff Joshua Blackwell, Energy Police Chief Shawn Ladd, Woodford County State's Attorney Greg Minger, Tazewell County Sheriff Jeff Lower) have publicly announced they will refuse to enforce Pritzker's orders, some going so far as to state they are unconstitutional, such that enforcement would be a violation of their oath of office.[2]

---

[1] Defendant Pritzker's stay-at-home orders divide businesses into "essential" and "non-essential," with essential businesses allowed to operate with minimal alterations while non-essential businesses are closed to the public.

[2] And even Chicago Mayor Lori Lightfoot, a former federal prosecutor, recently stated that her police force would not enforce Pritzker's impending mask requirement. *See*, https://www.nbcchicago.com/news/local/what-to-know-about-the-new-mask-requirement-when-do-you-need-one-how-will-it-be-enforced/2261209/ ("Chicago Mayor Lori Lightfoot said she

6.      At least one of these law enforcers cited as support a widely circulated and reported memo recently sent by the Chief Deputy Director of the Illinois Appellate Prosecutor's Office to the Director, for use in that Office's role as advisor to Illinois State's Attorneys, casting substantial doubt on the constitutionality of numerous provisions of Pritzker's executive orders. The Chief Deputy Director's memo specifically references the restrictions on religious activity therein, noting that "the EO is very broad and does not appear to meet strict scrutiny -- this is not to mention the EO appears to be beyond the framework of the specific Act it cites as support." *See*, https://www.policeone.com/coronavirus-covid-19/articles/ill-chief-police-hold-no-interest-in-enforcing-stay-at-home-order-DNteArzdzYDmvGh2/ (citing Memo found at https://edgarcountywatchdogs.com/wp-content/uploads/2020/04/COVID-19-Memo-4.21.20-003.pdf).

7.      On Tuesday, April 27, an Illinois Circuit Court agreed with this assessment and issued a temporary restraining order to a local state legislator against the current executive order. *See, Bailey v. Pritzker*, Clay Co. No. 20-CH-6. On Wednesday, April 28, another lawsuit was filed by a state legislator in Winnebago County Circuit Court, alleging Pritzker's orders exceeded his statutory and constitutional power. *See, Cabello v. Pritzker*, Winnebago Co. No. 2020-CH-210.

8.      Despite the deep statewide concerns about the shaky legal foundations of his orders, Pritzker has not yielded to those concerns, but instead doubled down, announcing he will extend his orders to the end of May and beyond. Throughout, the Illinois State Police has threatened criminal enforcement of the orders statewide, even when local law enforcement decides not to do so. *See, e.g.,* https://newschannel20.com/news/local/isp-clarifies-enforcement-

---

opposed making masks a requirement . . . . she doesn't plan on arresting or citing people who don't wear a mask . . . .")

of-stay-at-home-order ("'While the goal is voluntary compliance, citizens should be aware that non-compliance with the Executive Order can result in criminal and civil sanctions,' said an Illinois State Police spokesperson.") & https://www.wglt.org/post/pekin-country-club-golf-course-closes-after-state-police-intervene#stream/0 ("Illinois State Police delivered a cease-and-desist letter to the private venue to force compliance with Gov. J.B. Pritzker's stay-at-home executive order. . . . Tazewell County Sheriff's Office had expressed 'no issue' with continued golfing at the Pekin Country Club").

9.      It has also been publicly reported that prominent government officials have violated Pritzker's orders, without consequence. Mayor Lightfoot famously violated the orders and got a haircut, despite the hair stylists and barbers of the state being shut down, with no income and still being unable to access unemployment benefits nearly 6 weeks into the mandatory shutdown.[3]

10.      Plaintiffs believe that, in these dark times, Illinoisans need the Spirit of Almighty God, but Pritzker's orders have left them to settle for the lesser spirits dispensed out of the state's liquor stores. The churches and pastors of Illinois are no less "essential" than its liquor stores to the health and well-being of its residents. Defendants have thus intentionally denigrated Illinois churches and pastors and people of faith by relegating them to second-class citizenship. Defendants have no compelling justification for their discriminatory treatment of churches and

---

[3]  The First Lady of Illinois has also been reported to be in residence at Pritzker's vacation home in Florida, which would be a violation of Pritzker's travel orders, if she did not leave before their effective date almost a month and a half ago. *See*, https://ilrisingaction.org/first-lady-mk-pritzker-violates-stay-at-home-order-by-traveling-to-familys-florida-compound/ (citing https://patch.com/illinois/chicago/does-all-illinois-slogan-apply-billionaire-govs-family). Pritzker refused to answer questions related to the issue at his April 29 press conference. *See,* https://twitter.com/MarkMaxwellTV/status/1255590975826808833.

pastors and people of faith, nor have they attempted in any way to tailor their regulations to the least restrictive means necessary to meet any arguable compelling interest.

11.     Plaintiffs intend to reopen and hold public worship services this Sunday, May 3. They justifiably fear arrest and prosecution if they do so, without immediate relief from this Court.

12.     Plaintiffs seek temporary and permanent injunctive relief against Pritzker's orders shuttering their church, church ministries, and pastoral activities, as illegal and unconstitutional on their face and as applied to Plaintiffs.

## II.      Parties

13.     The Beloved Church ("the Church") is an evangelical Christian church, organized as an Illinois not-for-profit corporation, located in the Village of Lena, Stephenson County, Illinois. Its principal asset is a church building located in the Village of Lena. The Church sues in its own capacity and on behalf of its congregants.

14.     Plaintiff, Stephen Cassell, is pastor of the Church and a resident of Pearl City, Stephenson County, Illinois.

15.     Defendant, Jay Robert Pritzker, is the governor of the state of Illinois.

16.     Defendant, David Snyders, is the Sheriff of Stephenson County, Illinois, and has been serving in that office at all times relevant to this Complaint.

17.     Defendant, Steve Schaible, is the Police Chief of the Village of Lena, in Stephenson County, Illinois, and has been serving in that office at all times relevant to this Complaint.

18.     Defendant, Craig Beintema, is the Public Health Administrator of Stephenson County, Illinois, and has been serving in that office at all times relevant to this Complaint.

## III.     Venue

5

19.     Plaintiffs and the local Defendants (Snyders, Schaible, and Beintema) are resident in the Northern District, Western Division. Many of the acts and omissions, and the effects of the acts and omissions, giving rise to this case occurred in Stephenson County, which is in the Northern District, Western Division.  Venue is thus proper in this District under 28 U.S.C. § 1391.

## IV.     Jurisdiction

20.     This court has jurisdiction over the federal claims asserted here under the federal question provision of the Judicial Code, 28 U.S.C. § 1331.

21.     This court has jurisdiction over the claims asserting violations of the Illinois Constitution and Religious Freedom Restoration Act, 775 ILCS 35/1, *et seq.*, under the supplemental jurisdiction provision of the Judicial Code, 28 U.S.C. § 1367(a).

22.     As alleged more fully below, all of Defendants' actions that have deprived Plaintiffs of rights under the U.S. Constitution have been taken under color of law.

23.     This Court has the authority to grant the requested injunctive relief under 28 U.S.C. § 1343(3), declaratory relief under 28 U.S.C. §§ 2201 and 2202, the claim for damages under 42 U.S.C. § 1983, and to grant costs, including reasonable attorney's fees, under 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

## V.     Facts

### A.     Plaintiffs Sincerely Believe, Teach, and Preach the Gospel of Jesus Christ

24.     Pastor Cassell founded the Church on the truths of God's unconditional Love, amazing Grace and majestic Restoration available through the completed work of Jesus Christ. Plaintiffs hold firm to these life-changing foundations as they joyfully undertake their mission to the community.

25.     Among other beliefs, Plaintiffs believe that the entire bible, Old and New Testaments, are a completed and infallible work called the Word of God. This work contains a completed revelation of God for mankind and the final authority for all Christian faith and practice. *See*, 2 Timothy 3:15-17, Psalms 19:7-11.

26.     Plaintiffs are passionate to share the love of God with their congregants, who form what they believe is their Church family. Plaintiffs believe that through connecting with those in need, they can assist them in building a Godly and rock-solid foundation that cannot be shaken under any circumstance. To that end, Plaintiffs bring their understanding and personal experience with the issues and problems facing us all in today's world, including the coronavirus epidemic. Pastor Cassell lives, works, and ministers among and alongside his Church family. Plaintiffs are dedicated to being available to congregants and community members for counsel and assistance in any area of their lives. Plaintiffs believe there is no problem or situation too big or small for their gracious Savior to overcome.

27.     From the time that he first founded the Church, Pastor Cassell has presided over Sunday religious services at the Church, as well as other religious services, to which all members of the Church are invited and strongly encouraged to attend. Those services have been held for the last five years in the Church's building in Lena, Illinois. Approximately 80 people attend Sunday services at the Church.

28.     These weekly Sunday services include the proclamation of portions of scripture by Pastor Cassell to the assembled congregation; a message preached on the chosen scriptural passage by Pastor Cassell to the assembled congregation; oral, communal proclamation of prayers by both Pastor Cassell and the assembled congregation; and communal singing of praise and worship by Pastor Cassell and the assembled congregation.

29.     During and after each Sunday service, the assembled members of the congregation are encouraged by Pastor Cassell to converse in, and on the grounds adjacent to, the church building to build fellowship and morale, individually and collectively, among congregation members so they may better perform the congregation's scripturally mandated evangelical function.

30.     The assembly of members of the congregation at these Sunday services, the communal prayer and singing, the communal preaching and fellowship, and the informal conversation and fellowship among congregation members after the services are all essential parts of a functioning Christian congregation.

31.     The weekly Sunday worship and prayer services are the central religious rites of the Church congregation. *See, e.g.,* James 5:14 ("Is any sick among you? Let him call for the elders of the church; and let them pray over him, anointing him with oil in the name of the Lord . . .") & Hebrews 10:24-25 ("And let us consider how we may spur one another on toward love and good deeds, not giving up meeting together, as some are in the habit of doing, but encouraging one another—and all the more as you see the Day approaching."). The congregation cannot truly "work from home," without forfeiting many of the great spiritual and religious benefits and comforts they receive from Plaintiffs.

32.     From the time that he founded the Church, Pastor Cassell has also engaged in visits to and meetings with his congregants and community members for the purpose of prayer and spiritual counseling and support. *See, e.g.,* Matthew 18:20 ("For where two or three are gathered in my name, there am I in the midst of them."). In today's crisis, with many in Stephenson County and surrounding areas out of work or suffering other economic, psychological, or emotional distress, Pastor Cassell's spiritual visits and counseling are vitally necessary to the health and well-being of the community. For a father out of work, a young

8

person at risk for suicide, or a mom dealing with substance abuse, a "Zoom meeting" just doesn't cut it.

33.     Pastor Cassell's organization of Sunday services, his role as senior pastor and preacher, and his prayer and spiritual counseling visits and meetings are central functions of his leadership of the Church. Pastor Cassell believes and teaches these functions are scripturally mandated for anyone claiming to hold the office of pastor of a Christian congregation. They are, therefore, religiously required for Pastor Cassell to perform.

**B.      Defendants Have Illegally Shuttered Illinois' Churches By Declaring Them "Non-Essential" And Forbidden Residents From Leaving Their Homes For Church Or Religious Purposes.**

34.     On March 9, 2020, Defendant Pritzker declared the entire State of Illinois a "disaster area" due to the coronavirus epidemic and invoked his powers under the Illinois Emergency Management Agency Act ("IEMA Act"). (linked at https://coronavirus.illinois.gov/ s/resources-for-executive-orders).

35.     The IEMA Act, at 20 ILCS 3305/7, provides that, "In the event of a disaster, as defined in Section 4, the Governor may, by proclamation declare that a disaster exists. Upon such proclamation, the Governor shall have and may exercise for a period not to exceed 30 days the following emergency powers." The Act defines "disaster" to mean "an occurrence or threat of widespread or severe damage, injury or loss of life or property resulting from any natural or technological cause, including but not limited to . . . epidemic . . . ."

36.     On April 2, 2020, Defendant Pritzker issued another proclamation in relation to the coronavirus epidemic purporting to extend his powers another 30 days under IEMA Act, and stating that, "I find that a continuing disaster exists . . . . This proclamation continues the Governor's authority to exercise all of the emergency powers provided in" the Act. (linked at https://coronavirus.illinois.gov/s/resources-for-executive-orders).

9

37.     On or about April 23, 2020, Defendant Pritzker stated his intent to issue another disaster proclamation in relation to the coronavirus epidemic purporting to extend his powers an additional 30 days.

38.     Defendant Pritzker has issued a number of executive orders in relation to the coronavirus epidemic and purporting to exercise his authority under the IEMA Act, including his first "stay-at-home order" in Executive Order ("EO") 2020-10, issued March 20, 2020, which is attached hereto as Exhibit A. He purported to extend that stay-at-home order, in relevant part, in EO 2020-18. On or about April 23, 2020, he stated his intent to extend that purported stay-at-home order until May 30, 2020. The intended new stay-at-home order released to the media by the Pritzker Administration, which is attached hereto as Exhibit B, adds dog grooming, golfing, and fishing to the list of "essentials." (Found at https://chicago.suntimes.com/2020/4/24/ 21235051/extended-say-at-home-order-illinois-full-text-pritzker-read-masks). Under the new order, while congregants will be able to travel to take their pets for grooming, they will still be forbidden to travel for religious purposes and their churches will continue to be shut down as "non-essential," until at least May 30.

39.     EO 2020-10[4] commands that, "With exceptions as outlined below, all individuals currently living within the State of Illinois are ordered to stay at home or at their place of residence except as allowed in this Executive Order….All persons may leave their homes or place of residence only for Essential Activities, Essential Governmental Functions, or to operate Essential Businesses and Operations, all as defined below." Sec. 1, par. 1.

---

[4] All citations are to EO 2020-10 as the model for the relevant executive orders. EO 2020-18 purported to extend 2020-10 until the end of April without changes. *See*, https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-18.aspx ("Executive Order 2020-10 is continued and extended in its entirety for the duration of the Gubernatorial Disaster Proclamations, which currently extends through April 30, 2020.") The upcoming announced EO inserts a new section 1 and moves the current section 1 into new EO section 2.

40.     EO 2020-10 further prohibits "all public and private gatherings of any number of people outside a single household." Sec. 1, par. 3.

41.     EO 2020-10 sweeps within its ambit any "non-profit … entities," including the Church (and all Illinois churches), in its definition section, as follows: "**Businesses covered by this Executive Order.** For the purposes of this Executive Order, covered businesses include any for-profit, non-profit, or educational entities, regardless of the nature of the service, the function it performs, or its corporate or entity structure." Sec. 1, par. 11.

42.     EO 2020-10 separates all businesses into one of two categories, "essential" and "non-essential," commanding that, "**Non-essential business and operations must cease**. All businesses and operations in the State, except Essential Businesses and Operations as defined below, are required to cease all activities within the State except Minimum Basic Operations, as defined below." Sec. 1, par. 2.

43.     EO 2020-10 expressly recognizes religious nonprofits and allows for them to operate as "essential businesses," but only "when providing food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals, individuals who need assistance as a result of this emergency, and people with disabilities." Sec. 1 par. 12(c).

44.     Under a plain reading of EO 2020-10, the Church is subject to its regulations as a "business." But Plaintiffs' prayer and worship services, ministries, and pastoral and spiritual visits are entirely prohibited, insofar as they do not involve the provision of "food, shelter, and social services," etc.[5] Further, while the Church's congregants may leave their homes for alleged

---

[5] EO 2020-10 allows an exception for "non-essential businesses" to continue "Minimum Basic Operations," which it defines as including in relevant part, "The minimum necessary activities to maintain the value of the business's inventory, preserve the condition of the business's physical plant and equipment, ensure security, process payroll and employee benefits, or for related

"essential" purposes, they and Pastor Cassell are barred from leaving their homes to attend the Church's services and ministries.

45.     Defendant Pritzker has further expressed official hostility to religious exercise, going so far as to reaffirm his ban on even drive-in parking lot church services. *See*, https://www.news-gazette.com/coronavirus/saturdays-coronavirus-updates-pritzker-cautions-against-easter-drive-in-services-3-new-cases-in-champaign/article_b02a195c-7c10-11ea-abff-0b35a3b4cc97.html ("On Easter eve, Gov. J.B. Pritzker cautioned against churches holding drive-in services in their parking lots."). Local officials in Illinois have enforced Pritzker's ban on drive-in church services. (*See, e.g.*, Peoria County ( https://www.centralillinoisproud.com/news/local-news/peoria-county-officers-break-up-parking-lot-church-service-remind-people-not-to-attend-religious-services-to-prevent-possible-covid-19-spread/) & Sangamon County (https://www.illinoistimes.com/springfield/going-to-church-or-pot/Content?oid=12070231).

46.     Defendant Pritzker has repeatedly confirmed that criminal enforcement and penalties attach to violations of his orders. *See, e.g.,* https://newschannel20.com/news/local/pritzker-police-can-charge-violators-of-stay-at-home-order ("If they refuse and if they repeatedly refuse, there is the ability by the police officers to charge them with reckless conduct and take them into custody.").

**C.     Defendants Forcibly Closed The Church And Threatened To Prosecute Pastor Cassell**

47.     On or about March 31, 2020, Defendant Beintema delivered a "Cease and Desist Notice" to Pastor Cassell, a true and accurate copy of which is attached hereto as Exhibit C.

---

functions." Sec. 1, par. 13. Church prayer and worship services, pastoral ministries, and other church ministries do not fall within this exception.

48. On March 31, 2020, the "Cease and Desist Notice" was personally served on Pastor Cassell by deputies employed by Defendant Snyders' office.

49. The Notice instructed Pastor Cassell that "your establishment, The Beloved Church, is required to adhere to [EO 2020-10]." And further that "[i]f you do not adhere to this Executive Order, the Illinois Department of Public Health has the authority to order that a place be closed and made off limits to the public." It also stated, "[i]n addition to such order of closure issued … you may be subject to additional civil and criminal penalties." And "[f]urthermore, police officers, sheriffs and all other officers in Illinois are authorized to enforce such orders." The Notice specifically states that "Essential Businesses and Operations have not been defined to include *religious gatherings* of 10 or more people" (emphasis supplied).

50. In view of this Notice and Pritzker's orders, Plaintiffs have suspended all communal activities at the Church building, including the Sunday services. Plaintiffs justifiably fear arrest, prosecution, fines, and jail time if they open their church building or hold religious services of any kind.

### D. Pritzker's Orders Allow Gatherings At Liquor Stores And Other Businesses Deemed "Essential," While Entirely Forbidding Church Worship And Religious Gatherings

51. Pritzker's Executive Orders allow so-called "Essential" businesses to operate with no limit on the number of individuals gathered therein, while every religious gathering of any number is prohibited. See, EO 2020-10, *passim*.

52. For instance, based on personal observation, Pastor Cassell has observed that local Menards and Walmart stores in Stephenson County routinely assemble many more than 10 customers in their facilities. He has further observed that neither store requires those customers to observe 6-foot social distancing as required by Pritzker's Executive Orders. Defendants, however, have not threatened those businesses with forcible closure or criminal prosecution.

13

53.     Pastor Cassell observes that Snak King, one of the largest snack food manufacturers in the country, operates a plant in Stephenson County that routinely has dozens if not hundreds of persons on site.

54.     Pastor Cassell observes that "mental health and substance use providers" remain open for in-person counseling and services, under the "Healthcare and Public Health Operations" section of EO 2020-10. Defendant Pritzker recognizes the benefit of providing mental health and substance abuse support services—as long as they are ***not*** provided by pastors and churches.

55.     Pastor Cassell is also aware of liquor stores and all manner of other businesses being open to the public in his community. These alleged "Essential Businesses" operate, while his Church, which he had understood before this epidemic stood in high regard and enjoyed special protection under the United States and Illinois Constitutions, remains shuttered. Plaintiffs contend the notion of regulating churches as "businesses" is already insulting—going further and declaring churches to then be "non-essential businesses" reeks of rank bigotry. Without relief from this Court, the churches of this State will remain shuttered for an indefinite future, subject to the unchallenged, unexplained, and unreasonable whim of one man: Defendant Pritzker.

### E.     Pritzker Lacks Statutory Authority To Extend His Emergency Powers Past 30 Days And Issue EO 2020-18 And His Announced Upcoming Order

56.     The express terms of the Emergency Management Agency Act, the authority Pritzker invoked as the basis for his authority to impose EO 2020-10 and to extend it as set forth in EO 2020-18, limit the duration of the Governor's power to thirty days per disaster.  The Act provides:

> In the event of a disaster ... the Governor may, by proclamation declare that a disaster exists. Upon such proclamation, the Governor shall have and may exercise for a period not to exceed 30 days [his] … emergency powers.

20 ILCS 3305/7.

57.     On March 9, 2020, Defendant Pritzker first declared all counties in the State of Illinois as a disaster area due to the COVID-19 epidemic.  Accordingly, his authority to invoke and exercise his emergency powers terminated on April 8, 2020. There is only one disaster: the current COVID-19 epidemic.

58.     Pritzker promulgated EO 2020-10 on March 9, 2020 and its term explicitly extended only to April 7, 2020.

59.     Notwithstanding the explicit statutory temporal limitation on his emergency powers imposed by the Emergency Management Agency Act, on April 1, 2020, Defendant Pritzker again declared all counties in the State of Illinois as a disaster area due to COVID-19. Based on the alleged authority deriving from that April 1, 2020 disaster proclamation, Defendant Pritzker, subsequently issued EO 2020-18, by which he purported to "continue" and "extend" EO 2020-10 through April 30, 2020.

60.     Defendant Pritzker's emergency powers, including the power to "extend and continue" EO 2020-10 for thirty (30) days, by issuing EO 2020-18, do not extend beyond the 30 days beginning with his original March 9, 2020 COVID-19 disaster proclamation.

61.     Outside of the 30-day period in which the Governor may exercise emergency powers, the Department of Public Health "has general supervision of the interests of the health and lives of the people of the State. It has supreme authority in matters of quarantine and isolation." 20 ILCS 2305/2(a).  When it exercises that isolation authority to order the forcible closure of premises to the public, however, it must give the owners of such premises the right to insist on proof of the necessity for closure in a court of law within 48 hours. 20 ILCS 2305/2(c).

62.     Because Defendant Pritzker has arrogated that authority to himself by an unlawful purported enlargement of his emergency powers, Plaintiffs have been deprived of the protection

of the mandated procedures and protections that must attend closure of private premises—

including the right for prompt judicial review.

**F.    Pritzker Lacks Statutory Authority To Quarantine or Isolate Residents or To Shut Down Churches**

63.    Defendant Pritzker lacks authority under the IEMA Act to impose a quarantine or

isolation on Illinois residents, or to order shutdowns of Illinois churches. The Illinois Department

of Public Health Act ("IDPH Act") provides that IDPH has "supreme authority in matters of

quarantine and isolation." 20 ILCS 2305/2(a).

64.    IDPH alone may order quarantines and isolations of individuals or groups or

closures of places, "to prevent the probable spread of a dangerously contagious or infectious

disease." 20 ILCS 2305/2(b).

65.    The IDPH Act provides the exclusive remedy for quarantine and isolation and

closures, along with ensuring the due process rights of those who are subject to such measures.

See, 20 ILCS 2305/2(c) ("Except as provided in this Section, no person or a group of persons

may be ordered to be quarantined or isolated and no place may be ordered to be closed and made

off limits to the public except with the consent of the person or owner of the place or upon the

prior order of a court of competent jurisdiction.") & 77 Ill.Adm.Code 690.1330 (describing

process for quarantine, isolation, and closure).

66.    In shutting down Plaintiffs, Defendant Pritzker has not followed the strictures of

the IDPH Act and the relevant sections of the Administrative Code. He has not provided

Plaintiffs notice and a meaningful opportunity to be heard, nor any due process at all.

**G.    Pritzker's Executive Orders Are Facially Unconstitutional In Violation Of The Constitutional Rights to Free Exercise of Religion, Free Speech, and Freedom of Assembly**

67.     EO 2020-10 and EO 2020-18, and the announced upcoming executive order, are facially unconstitutional because they discriminate against religious practice, speech and assembly, while giving favored status to numerous private businesses, including liquor stores, by designating them "Essential Businesses and Operations," even though those favored businesses are certainly no more "essential" as evidenced by the protections afforded religious practice, speech and assembly by the First Amendment of the U.S. Constitution and sections 3, 4, and 5 of Article 1 of the Illinois Constitution, and pose an equivalent or even greater threat of the spread of COVID-19.

68.     At least one other district court has protected religious exercise against another governor's executive orders, recognizing that, "While these executive orders begin with a broad prohibition against mass gatherings, they proceed to carve out broad exemptions for a host of secular activities, many of which bear similarities to the sort of personal contact that will occur during in-person religious services. *Lukumi [Babalu Aye v. Hialeah*, 508 U.S. 520 (1993)] indicates that a court should evaluate these exemptions in assessing a law's neutrality." *First Baptist Church v. Laura Kelly, Gov'r of Kansas*, No. 10-1102 (D. Kan., April 18, 2020) (A copy of the opinion is attached as Exhibit D.).

69.     Moreover, the epidemic is in a much different place today than it was on March 9, 2020. At this point, it is widely reported that the coronavirus epidemic "curve" has been substantially "flattened" statewide. *See, e.g.,* https://wgntv.com/news/coronavirus/over-2000-new-cases-of-covid-19-in-illinois-59-additional-deaths/ ("As infection rates seem to suggest a "flattening" of the coronavirus curve in Illinois, officials are scaling back the number of beds available at McCormick Place. Only 1,000 of the original 3,000 hospital beds at the alternate care facility will remain operational."). With the temporary hospital at McCormick Place now being significantly scaled back, hospital and ICU capacity have clearly proven sufficient to meet

the coronavirus challenge. *See, e.g.,* http://www.dph.illinois.gov/covid19/hospitalization-utilization. "Flattening the curve" to preserve hospital capacity was the principal reason for Pritzker's orders: that aim has now been achieved. *See, e.g.,* https://www.nbcchicago.com/news/local/pritzker-says-illinois-needs-38000-more-beds-for-covid-19/2243800/?_osource=SocialFlowTwt_CHBrand. Yet Pritzker's orders as to churches and religious activities have not changed one iota from the early days of the coronavirus epidemic—when COVID-19 cases were growing exponentially, and policymakers feared millions would die—to today—when the level of coronavirus infections is stable. *See, e.g.*, rt.live (Illinois Rate of transmission, "Rt," at .88, where "Values over 1.0 mean we should expect more cases in that area, values under 1.0 mean we should expect fewer.").

70.     There is no attempt at tailoring in the executive orders, much less narrow tailoring. Every church in the state has been shuttered, and every pastor and congregant placed under house arrest, save for "essential" non-religious activities. This has now gone on for almost a month and a half, with another month to come, and with no end in sight. No thought has been given to regional differences in these orders. No consideration has been made for church size. No allowance has been made in relation to particular individuals' risk factors for coronavirus. No explanation has been offered to tie any spread of the coronavirus to a particular community. These orders cannot meet strict scrutiny.

### H.     Pritzker's Executive Orders Are Unconstitutional As Applied to Plaintiffs

71.     The executive orders are not narrowly tailored to the coronavirus situation in Stephenson County, Illinois. Numerous elected officials in Stephenson County, including the Mayor of Lena, Illinois, have begged Defendant Pritzker for localized relief from his orders, and they have expressed their readiness to address the issues presented by the coronavirus at the local level. See, e.g., https://cityoffreeport.org/press-release-city-and-stephenson-county-villages-

18

letter-to-gov-pritzker/ ("we strongly request that you allow each community or region, that knows their businesses, their people, and the COVID impact on their community to make the proper decisions on reopening businesses. . . . we feel that a one-size-fits-all set of restrictions isn't feasible for the entire state of Illinois. Stephenson County is not Cook County, and quite frankly, counties like ours have a different culture that, by nature, normally utilizes social distancing.") & https://wrex.com/2020/04/28/stephenson-co-board-members-send-letter-to-pritzker-urging-different-approach-to-covid-19/ (". . . the current one-size-fits all top down authoritarian approach to combating this health crisis is unrealistic. We believe the protection of public health can occur simultaneously with the preservation of freedom and liberty by focusing on personal responsibility, and by also allowing local officials to address the problem at the local level."). The people of Stephenson County deserve relief, and an executive order that responds to their particular spiritual needs.

72.     Nor are Pritzker's orders narrowly tailored to Plaintiffs, their 80-person Sunday services, or their pastoral activities, nor has any tailoring been attempted. Plaintiffs are fully willing to comply with proper constitutional guidelines, provided by government officials with authority to issue those guidelines. But they cannot abide an indefinite shut down of their church.

**COUNT I**
**VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS OF**
**THE U.S. CONSTITUTION – FREE EXERCISE**
**(42 U.S.C. § 1983)**

73.     Plaintiffs incorporate paragraphs 1 through 72.

74.     Plaintiffs' religious activities are protected by the Free Exercise Clause of the First Amendment of the Constitution of the United States. Those protections constrain Defendants through the Due Process Clause of the Fourteenth Amendment.

75.     The actions of Defendants in threatening forcible closure, prosecution, and fine under the "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, interfere with Plaintiffs' free exercise by prohibiting any religious activity in the church building and otherwise prohibiting and interfering with the Church's religious practices.

76.     The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, interfere with Plaintiffs' ability to carry out their religious doctrine, faith, and mission.

77.     The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, do not serve any compelling government interest, and are not narrowly tailored to accomplish any government interest, compelling or otherwise, in the least restrictive manner.

78.     The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, violate the Free Exercise Clause of the First Amendment on their face and as applied to Plaintiffs.

79.     Plaintiffs are entitled to at least nominal damages for this infringement of their rights.

80.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the notice and orders.

81.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the notice and orders.

82.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT II
## VIOLATIONS OF ARTICLE 1, SECTION 3 OF
## THE ILLINOIS CONSTITUTION – FREE EXERCISE

83.　Plaintiffs incorporate paragraphs 1 through 82.

84.　Plaintiffs' religious activities are protected by the Free Exercise Clause of Article 1 of the Illinois Constitution.

85.　The actions of Defendants in threatening forcible closure, prosecution, and fine under the "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, interfere with Plaintiffs' free exercise by prohibiting any religious activity in the church building  and otherwise prohibiting and interfering with the Church's religious practices.

86.　The "Cease and Desist Notice" and EO 2020-10 and EO 2020-18, and the upcoming announced EO, interfere with Plaintiffs' ability to carry out their religious doctrine, faith, and mission.

87.　The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO do not serve any compelling government interest and are not narrowly tailored to accomplish any government interest, compelling or otherwise, in the least restrictive manner.

88.　The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, violate the Free Exercise Clause of the Illinois Constitution, on their face and as applied to Plaintiffs.

89.　Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the notice and orders.

## COUNT III
## VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS OF
## THE U.S. CONSTITUTION – FREE SPEECH
## (42 U.S.C. § 1983)

90.     Plaintiffs incorporate paragraphs 1 through 89.

91.     Plaintiffs' rights to speak freely and peaceably assemble are protected by the Free Speech Clause of the First Amendment of the Constitution of the United States.  Those protections constrain Defendants through the Due Process Clause of the Fourteenth Amendment.

92.     The actions of Defendants in threatening forcible closure, prosecution, and fine under the "Cease and Desist Notice", EO 2020-10 and 2020-18 interfere with Plaintiffs' free speech by targeting and burdening their religious expression, including prohibiting any communal prayer and singing.

93.     The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, do not serve any compelling government interest, and are not narrowly tailored to accomplish any government interest, compelling or otherwise, in the least restrictive manner. They are not reasonable time, place, or manner restrictions because they burden substantially more speech than necessary to achieve the government's interests and do not leave open ample alternative channels of communication.

94.     The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, violate the Free Speech Clause of the First Amendment on their face and as applied to Plaintiffs.

95.     Plaintiffs are entitled to at least nominal damages for this infringement of their rights.

96.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the notice and orders.

97.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the notice and orders.

98.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**COUNT IV**
**VIOLATIONS OF ARTICLE 1, SECTION 4 OF**
**THE ILLINOIS CONSTITUTION – FREE SPEECH**

99.     Plaintiffs incorporate paragraphs 1 through 98.

100.    Plaintiffs' rights to speak freely are protected by the Free Speech clause of Article 1 of the Illinois Constitution.

101.    The actions of Defendants in threatening forcible closure, prosecution, and fine under the "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, interfere with Plaintiffs' free speech by targeting and burdening their religious expression, including prohibiting any communal prayer and singing.

102.    The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, do not serve any compelling government interest, and are not narrowly tailored to accomplish any government interest, compelling or otherwise, in the least restrictive manner. They are not valid time, place, or manner restrictions on Plaintiffs' speech because they burden substantially more speech than necessary to achieve the government's interests and do not leave open ample alternative channels of communication.

103.    The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, violate the Free Speech Clause of the Illinois Constitution both on their face and as applied to Plaintiffs.

104.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the notice and orders.

### COUNT V
**VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION – FREEDOM TO ASSEMBLE**
**(42 U.S.C. § 1983)**

105.      Plaintiffs incorporate paragraphs 1 through 104.

106.     Plaintiffs' rights to peaceably assemble are protected by the First Amendment of the Constitution of the United States.  Those protections constrain Defendants through the Due Process Clause of the Fourteenth Amendment.

107.     The actions of Defendants in threatening forcible closure, prosecution, and fine under the "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, interfere with Plaintiffs' freedom to assemble by prohibiting any communal activity in the church building.

108.     The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, do not serve any compelling government interest, and are not narrowly tailored to accomplish any government interest, compelling or otherwise, in the least restrictive manner. They also are not reasonable time, place, and manner restrictions because they burden substantially more speech than necessary to achieve the government's interests and do not leave open ample alternative channels of communication.

109.     The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, violate the freedom to peaceably assemble protected by the First Amendment both on their face and as applied to Plaintiffs.

110.    Plaintiffs are entitled to at least nominal damages for this infringement of their rights.

111.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the notice and orders.

112.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the notice and orders.

113.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### COUNT VI
### VIOLATIONS OF ARTICLE 1., SECTION 5 OF
### THE ILLINOIS CONSTITUTION – FREEDOM TO ASSEMBLE

114.     Plaintiffs incorporate paragraphs 1 through 113.

115.    Plaintiffs' rights to peaceably assemble are protected by the Freedom to Assemble clause of Article 1. of the Illinois Constitution.

116.    The actions of Defendants in threatening forcible closure, prosecution, and fine under the "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, interfere with Plaintiffs' freedom to peaceably assemble by prohibiting any communal activity in the church building.

117.    The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, do not serve any compelling government interest, and are not narrowly tailored to accomplish any government interest, compelling or otherwise, in the least restrictive manner. They also are not reasonable time, place, and manner restrictions because they burden

substantially more speech than necessary to achieve the government's interests and do not leave open ample alternative channels of communication.

118. The "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, violate the Freedom to Assemble Clause of the Illinois Constitution both on their face and as applied to the Plaintiffs.

119. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the notice and orders.

## COUNT VII
## VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
### (42 U.S.C. § 1983)

120. Plaintiffs incorporate paragraphs 1 through 119.

121. EO 2020-10 and EO 2020-18, and the upcoming announced EO, and Defendants' enforcement thereof violate Plaintiffs' substantive due process rights secured by the Fourteenth Amendment to the U.S. Constitution. Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. *See, Duncan v. Louisiana*, 391 U.S. 145, 147–149 (1968). In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 484–486 (1965).

122.     Plaintiffs' rights to freedom of religion, assembly, speech, and travel are fundamental rights protected by the U.S. Constitution. *See, e.g., Aptheker v. Secretary of State*, 378 U.S. 500, 520 (1964); Kent v. Dulles, 357 U.S. 116, 127 (1958).

123.     When a government practice restricts fundamental rights such as the right to practice religion freely, assemble peacefully, speak, and travel, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose, and, even then, only if no less restrictive alternative is available. *See, e.g. Memorial Hospital v. Maricopa County*, 415 U.S. 250, 257-258 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 339-341 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 89 (1969), *Maher v. Roe*, 432 U.S. 464, 488 (1977). The Due Process Clause of the Fourteenth Amendment includes the right to be free from any purported normative, legal guidelines bestowing unfettered discretion on government officials about interpretation or enforcement.

124.     Strict scrutiny applies to Plaintiffs' claims because the EO 2020-10 and EO 2020-18, and the upcoming announced EO, mandate that Plaintiffs stay at home, impinging on their fundamental rights to freedom of religion, assembly, speech, and travel. These orders do not permit Plaintiffs to exercise these rights, unless Defendants deem them "essential" or as participating in "essential" activities.

125.     Defendants' mandates are not "narrowly tailored" to further any compelling governmental interest. Defendants' have granted numerous exemptions for purportedly "essential" businesses and activities. Since these gatherings can be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiffs to engage in equivalent constitutionally protected activities on the same or similar terms.

126.     Plaintiffs are entitled to at least nominal damages for this infringement of their rights.

127. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the notice and orders.

128. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the notice and orders.

129. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

<u>COUNT VIII</u>
**ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT (775 ILCS 35)**

130. Plaintiffs incorporate paragraphs 1 through 129.

131. Illinois' Religious Freedom Restoration Act ("RFRA") commands that Illinois government "may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." 775 ILCS 35/15.

132. Defendants, who are agents of Illinois government and therefore subject to the RFRA, have violated RFRA by substantially burdening Plaintiffs' exercise of their religion without any valid justification.

133. Defendants' "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, do not further a compelling governmental interest, and are not the least restrictive means of furthering any governmental interest, compelling or otherwise.

134.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the orders.

135.    Pursuant to 775 ILCS 35/20, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the notice and orders.

136.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 775 ILCS 35/20.

### COUNT IX
### DECLARATORY JUDGMENT (28 USC § 2201)

137.    Plaintiffs incorporate paragraphs 1 through 136.

138.    As set forth herein, Defendants have and continue to and will enforce against Plaintiffs the provisions of EO 2020-10 and EO 2020-18, and the upcoming announced EO;

139.    An actual controversy exists between Plaintiffs and Defendants as to whether Defendant Pritzker possesses the power and authority to issue EO 2020-18, by which he purported to extend the prohibitions set forth in EO 2020-10 through April 30, 2020.

140.    An actual controversy exists between Plaintiffs and Defendants as to whether Defendant Pritzker possesses the power and authority to issue an executive order providing for any additional extension of the prohibitions set forth in EO 2020-10 and EO 2020-18 as he has publicly announced he intends to do.

141.    An actual controversy exists between Plaintiffs and Defendants whether Defendant Pritzker possesses the power and authority to impose under the IEMA Act to impose a quarantine or isolation on Illinois residents, or to order shutdowns of Illinois churches, without

following the strictures of the IDPH Act and allowing residents and churches the due process provided them under the IDPH Act and related administrative rules.

142.     Plaintiffs seek a declaration that Pritzker was without the power or authority to issue EO 2020-18, by which Defendant Pritzker purported to extend the prohibitions set forth in EO 2020-10 through April 30, 2020; that he is without the power or authority to issue any additional extension of the prohibitions set forth in EO 2020-18 and EO 2020-18 as he has publicly announced he intends to do; and that he is without the power or authority to quarantine or isolate Illinois residents or order shutdowns of Illinois churches, without following the strictures of the IDPH Act and allowing residents and churches the due process provided them under the IDPH Act and related administrative rules.

WHEREFORE, under Counts I through VIII, Plaintiffs, Stephen Cassell and The Beloved Church, pray for judgment in their favor against Defendants and ask that the Court grant:

A.  A temporary restraining order restraining Defendants from preventing or interfering with communal religious activities at the Lena church building and the pastoral activities of Plaintiffs wherever they occur;

B.  A preliminary injunction restraining Defendants from preventing or interfering with communal religious activities at the Lena church building and the pastoral activities of Plaintiffs wherever they occur;

C.  A permanent injunction restraining Defendants from preventing or interfering with communal religious activities at the Lena church building and the pastoral activities of Plaintiffs wherever they occur;

D.  A declaration that the "Cease and Desist Notice", EO 2020-10 and EO 2020-18, and the upcoming announced EO, are illegal and unconstitutional facially and as applied to Plaintiffs;

E.  An award of nominal and actual damages against each of the Defendants;

F.  An award of costs and reasonable attorneys' fees incurred in the prosecution of this action; and,

G.  Any other relief the Court deems just and proper.

Under Count IX, Plaintiffs, Stephen Cassell and The Beloved Church pray for judgment in their favor against all Defendants and ask that the Court grant:

A.  A declaration that Defendant Pritzker was without the power or authority to issue EO 2020-18, by which Defendant Pritzker purported to extend the prohibitions set forth in EO 2020-10 through April 30, 2020;

B.  A declaration that Defendant Pritzker is without the power or authority to exercise his emergency powers beyond the 30 days permitted by the express terms of the Illinois Emergency Management Agency Act, including his announced but as yet unissued new COVID-19 executive order;

C.  A declaration that Defendant Pritzker is without the power or authority to quarantine or isolate Illinois residents or order shutdowns of Illinois churches, without following the strictures of the IDPH Act and allowing residents and churches the due process provided them under the IDPH Act and related administrative rules;

D.  A temporary restraining order restraining Defendants from seeking to enforce EO 2020-18 or any executive order or action undertaken by Defendant Pritzker by which he purports to further extend the prohibitions set forth in EO 2020-10 and EO 2020-18;

E.  A preliminary injunction further restraining Defendants from seeking to enforce EO 2020-18 or any executive order or action undertaken by Defendant Pritzker by

which he purports to further extend the prohibitions set forth in EO 2020-10 and

EO 2020-18;

F. A permanent injunction restraining Defendants from seeking to enforce EO 2020-

18 or any executive order or action undertaken by Defendant Pritzker by which he

purports to further extend the prohibitions set forth in EO 2020-10 and EO 2020-

18; and,

G. For such further relief as the Court may deem just and proper.

<u>/s/ Martin Whittaker</u>
<u>/s/Peter Breen</u>

Peter Breen
Thomas Brejcha
Martin Whittaker
**THE THOMAS MORE SOCIETY**
309 West Washington, Suite 1250
Chicago IL 60606
312 782 1680
<u>pbreen@thomasmoresociety.org</u>
<u>tbrejcha@thomasmoresociety.org</u>
<u>mwhittaker@thomasmoresociety.org</u>
*Attorneys for Plaintiffs*

## Verification

I, Stephen Cassell, declare that I have personal knowledge of the factual matters set out in this Complaint and declare under penalty of perjury that the foregoing is true and correct. Executed on April 30, 2020.



_____
**Stephen Cassell**