**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| THE BELOVED CHURCH, an Illinois Not-for-Profit Corporation, and PASTOR STEPHEN CASSELL, an individual, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-CV-50153 |
| | ) | Honorable Judge Lee |
| v. | ) ) | |
| JAY ROBERT PRITZKER, Governor of the State of Illinois, DAVID SNYDERS, Sheriff of Stephenson County, Illinois, STEVE SCHAIBLE, Chief of Police of the Village of Lena, Illinois, and CRAIG BEINTEMA, Administrator of the Department of Public Health of Stephenson County, Illinois, in their official capacities, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**SHERIFF SNYDERS AND ADMINISTRATOR BEINTEMA'S RESPONSE TO
PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

Defendants Stephenson County Sheriff Snyders and Stephenson County Administrator of Public Health Beintema have been caught in the middle of a fight between the Beloved Church and Pastor Cassell, on one side, and Governor Pritzker, on the other. The gravamen of this complaint challenges the constitutionality and enforceability of Governor Pritzker's "stay-at-home" Executive Orders, and Plaintiffs' motion seeks to enjoin enforcement of those Executive Orders.

Sheriff Snyders and Administrator Beintema, sued in their official capacities, are local public agencies. On March 31, 2020, Administrator Beintema issued a "Cease and Desist Notice," which advised Beloved Church that the Illinois Department of Public Health could, under the Illinois Department of Public Health Act, issue a closure order to the Beloved Church

1

if the church did not adhere to the Executive Orders. That Notice was served by a Sheriff's deputy. Plaintiffs began holding religious services via Facebook Live and YouTube, and they never heard from Sheriff Snyders or Administrator Beintema again. Nor did they seek any relief from the court at that time.

Yet, on April 30, 2020, Plaintiffs sued Sheriff Snyders and Administrator Beintema, and requested that this court enjoin them from enforcing the Executive Orders or the Cease and Desist Notice even though Sheriff Snyders and Administrator Beintema have never threatened to enforce the Executive Orders or the Cease and Desist Notice.

This court should deny Plaintiffs' motion as to Sheriff Snyders and Administrator Beintema for the following reasons:

First, Plaintiffs seek to disturb the status quo with an injunction that allows them to fill their church without any consideration to social distancing guidelines—something that no business has done for several months.

Second, Plaintiffs' request is not an "emergency" and denial of their request will not cause "irreparable harm" because they can minister via online streaming in compliance with the Executive Orders and social distancing guidelines, just like they have been doing since March 1, 2020.

Third, Plaintiffs' claims against Sheriff Snyders and Administrator Beintema are not ripe. Simply put, neither Sheriff Snyders nor Administrator Beintema has threatened any impending action that would cause injury. Plaintiffs cannot sue for possible future injury.

Fourth, Plaintiffs target the Executive Orders, and admit that the Public Health Act authorizes closure orders. Administrator Beintema acts pursuant to the Public Health Act, not the Executive Orders.

2

Finally, the danger to the public outweighs the Plaintiffs' desire to hold in-person services that do not account for social distancing guidelines.

For these reasons, Plaintiffs' motion for a temporary restraining order and preliminary injunction should be denied as to Sheriff Snyders and Administrator Beintema.

## BACKGROUND

### I.    Beloved Church and Pastor Cassell Have Been Conducting Online Sermons for Months.

Since at least March 1, 2020 (Sunday), Pastor Cassell has ministered to his congregation at the Beloved Church both in-person and using video platforms like Facebook Live and YouTube.[1]  Prior to March 31, the congregation attended services live at the Beloved Church, and the sermons were also then posted online.  Following March 31, the sermons were live-streamed online, but without a live audience inside the church.

Pastor Cassell's sermons are contemporary.  For example, on March 15, 2020, Pastor Cassell presented a sermon on YouTube called "Corona-Lie," in which he tells his congregation that Corona Beer has caused 2500 deaths, while Corona Virus has caused only 38 deaths.  Pastor Cassel advises his congregation:  "Why don't we shut the country down for the 2500 people that have died from alcohol?  Because it doesn't fit the narrative.  I don't know if you realize this, but you are being absolutely manipulated."[2]  It is evident from these videos that Pastor Cassell has no problem ministering to his congregation online, and also that he is skeptical (to say the least) of social distancing protocols suggested by Governor Pritzker and the CDC.

---

[1] The Beloved Church YouTube Channel is at
https://www.youtube.com/channel/UCWfpUtJNCXOZQOWI3vGWu7w. Sheriff Snyders and Administrator Beintema request that this court take judicial notice of the Beloved Church's YouTube channel.  *Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (approving district court taking judicial notice of website where the Defendant's website was cited by Plaintiff in response to Defendant's motion to dismiss, and Defendant had an opportunity to address the website in its reply brief and "simply failed to use that opportunity," and the assertions from the website relied on were the Defendant's own assertions, like in this case).
[2] https://www.youtube.com/watch?v=QJix0dCxhGQ&t=2345s (starting at around time stamp 38:58).

II.    **Stephenson County Health Department Issued a Cease and Desist Notice to Beloved Church on March 31, 2020.**

On March 31, 2020, the Stephenson County Health Department issued a "Cease and Desist Notice" to the Beloved Church, which deputies employed by the Stephenson County Sheriff allegedly served on Pastor Cassell. (Doc. 1 ¶ 48, Ex. C.) The Cease and Desist Notice set forth information on the COVID-19 pandemic and the terms of Executive Order 2020-10 responding to the pandemic, including its prohibition of religious gatherings of more than 10 people. The Cease and Desist Notice advised that the Beloved Church "is required to adhere to this Executive Order, and that these steps are necessary and proper to prevent further spreading of COVID-19." (*Id*.) Finally, the Cease and Desist Notice stated as follows:

> If you do not adhere to this Executive Order, the *Illinois Department of Public Health* has the authority to order that a place be closed and made off limits to the public, "to prevent the probable spread of a dangerously contagious or infectious disease ... until such time as the condition can be corrected or the danger to the public health is eliminated or reduced in such a manner that no substantial danger to the public's health any longer exists." 20 ILCS 2305/2(b). The process of issuing such an order is set forth in 20 ILCS 2305/2(c). Furthermore, police officers, sheriffs and all other officers in Illinois are authorized to enforce such orders. In addition to such an order of closure issued by the Illinois Department of Public Health you may be subject to additional civil and criminal penalties.

(*Id*.) (emphasis added). Notably, the Cease and Desist Notice was not an "order" under 20 ILCS 2305/2(c) from the Stephenson County Health Department. Rather, the Cease and Desist Notice was intended to place the recipient on "notice" that an order could be forthcoming from the Illinois Department of Public Health ("IDPH") if the IDPH deems one necessary under 20 ILCS 2305/2(b). The Cease and Desist Notice advised that once an "order" is issued by the IDPH, law enforcement is authorized to enforce that order, which is true. Notably, Plaintiffs do not allege that they were ever issued an "order" by the Stephenson County Health Department or the IDPH. Plaintiffs do not allege that Stephenson County Health Department threatened to issue its own order under 20 ILCS 2305/2(b). Plaintiffs do not allege that the Sheriff or his deputies ever threatened Cassell or anyone in his congregation with penalty if they violated the Cease and Desist Notice or any of the Executive

4

Orders. Plaintiffs do not allege that they had any contact whatsoever with Sheriff Snyders or Administrator Beintema after March 31.

Cassell took the Cease and Desist Notice seriously at first, and discontinued live attendance at the Beloved Church starting with his Sunday service on April 5. However, he continued his sermons online. That is, until last Sunday, on April 23, when Pastor Cassell announced the following at the conclusion of his Facebook Live sermon:

> I am not going to be bound by any man or any government system. So I'm here to tell you. Next week, Beloved Church, May 3, is going to be here and live and real. Which means that this is the last Facebook Live that you might ever see because we are going to be doing live church. Not Facebook Live. That doesn't mean that we are not going to record the message and all you folks that are out there because I know that there are a ton of you in other countries and other states and all that and you love hearing what we're doing and listening to my twangy voice, God bless you, and you're still gonna have that. We have a YouTube channel, you can subscribe, you can get all these messages. They'll show up. But the way that you are going to do church with us is right here, flesh and blood, cheek to cheek, hand to hand, heart to heart. It's been a long time coming and I'm happy to make this announcement.[3]

### III.  Plaintiffs' April 30, 2020 Lawsuit and the Subsequent Executive Order 2020-32.

Pastor Cassell and the Beloved Church filed this lawsuit and Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") around noon on April 30, 2020 in anticipation of Governor Pritzker signing Executive Order 2020-32, which Governor Pritzker announced on April 23, 2020 and a draft of which he released to the media on April 24, 2020. (Compl., Doc. 1 ¶ 38, Ex. B.) The gravamen of Plaintiffs' Complaint and Motion is that the anticipated Executive Order 2020-32 omitted religious services from its definition of "essential businesses," thus prohibiting the Beloved Church from opening during the pendency of the Executive Order and treating religion differently than other businesses like grocery stores. (Doc. 1 ¶ 44; Motion, Doc. 7 at 1.)

---

[3] https://www.youtube.com/watch?v=KjieDS3nwgY (starting at about 1:00:45 time stamp).

Plaintiffs jumped the gun, though. The final, signed version of Executive Order 2020-32 was released towards the end of the business day on April 30, 2020, and specifically *includes* religious activity as an "essential activity."[4] EO 2020-32 states the following in Section 2, Paragraph 5:

> **5. Leaving the home for essential activities is permitted.** For purposes of this Executive Order, individuals may leave their residence only to perform any of the following Essential Activities, and must follow the Social Distancing Requirements set forth in this Order, including wearing face coverings when in public or at work:
> . . .
>> **f. To engage in the free exercise of religion**. To engage in the free exercise of religion, provided that such exercise must comply with Social Distancing Requirements and the limit on gatherings of more than ten people in keeping with CDC guidelines for the protection of public health. Religious organizations and houses of worship are encouraged to use online or drive-in services to protect the health and safety of their congregants.

Executive Order 2020-32 defines Social Distancing Requirements as the following:

> **15. Social Distancing, Face Covering, and PPE Requirements**. For purposes of this Executive Order, Social Distancing Requirements includes maintaining at least six-foot social distancing from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces, and not shaking hands.
>> a. **Required measures.** Essential Businesses and Operations and businesses engaged in Minimum Basic Operations must take proactive measures to ensure compliance with Social Distancing Requirements, including where possible:
>>> i. **Designate six-foot distances**. Designating with signage, tape, or by other means six-foot spacing for employees and customers in line to maintain appropriate distance;
>>> ii. **Hand sanitizer and sanitizing products.** Having hand sanitizer and sanitizing products readily available for employees and customers;
>>> iii. **Separate operating hours for vulnerable populations**. Implementing separate operating hours for elderly and vulnerable customers; and

---

[4] Available at https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-32.aspx.

iv. **Online and remote access**.  Posting online whether a facility is open and how best to reach the facility and continue services by phone or remotely.

v. **Face Coverings and PPE**.  Providing employees with appropriate face coverings and requiring that employees wear face coverings where maintaining a six-foot social distance is not possible at all times.  When the work circumstances require, providing employees with other PPE in addition to face coverings.

Plaintiffs have indicated that they might file an Amended Complaint and Amended Motion for TRO, but as of the time of the filing of this brief, they have not done so.  They have also not withdrawn their current request for a TRO on their Initial Complaint, and it remains pending.

## IV.    Stephenson County Defendants Will Not Interfere with the May 3 Worship Service Pending Resolution of this Motion for Temporary Restraining Order.

Plaintiffs have made clear that they do not intend to adhere to Executive Order 2020-32. The Church expects about 80 parishioners on May 3, exceeding the 10-person cap set forth in Executive Order 2020-32. (Doc. 1 ¶ 72.)  Consistent with Governor Pritzker's comments on April 30 that, "Nobody's going to, you know, run in and break up a gathering of churchgoers at the moment,"[5] Sheriff Snyders will not enforce Executive Order 2020-32 against the Plaintiffs' worship service on May 3.

Similarly, Administrator Beintema, whose enforcement authority is limited to instituting prosecutions and proceedings for violations of the rules and regulations adopted by the IDPH, will not enforce Executive Order 2020-32 against the Plaintiffs' worship service on May 3.

For the reasons that follow, this court should deny Plaintiffs' Motion for entry of a temporary restraining order against Sheriff Snyders and Administrator Beintema.

---

[5] https://www.chicagotribune.com/coronavirus/ct-coronavirus-pritzker-church-lawsuit-20200430-eekia47qvjbx7cuoqaby7hv4ti-story.html.

**ARGUMENT**

"The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions." *Van Dyke v. Illinois Dep't of Children and Family Servs.*, No. 13-CV-5971, 2014 WL 2134580, at *8 (N.D. Ill. May 22, 2014) (Lee, J.). A temporary restraining order "is an extraordinary remedy that is 'never to be indulged in except in a case clearly demanding it.'" *See Air Serv Corp. v. Serv. Employees Int'l Union, Local 1*, 225 F. Supp. 3d 745, 747 (N.D. Ill. 2016) (Lee, J.) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the USA, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008)). The party moving for a temporary restraining order bears the burden of making a clear showing that it is entitled to the relief it seeks. *See Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005).

In determining whether to grant a motion for a temporary restraining order, courts engage in an analysis that proceeds in two separate phases: a threshold phase and a balancing phase. *See Air Serv Corp.*, 225 F. Supp. 3d at 747. To survive the threshold phase, the party seeking a temporary restraining order must show that it will suffer irreparable harm without the injunction, that traditional legal remedies would be inadequate, and that its claim has a likelihood of success on the merits. *Id.* at 1086. If these threshold requirements are not met, the motion for a preliminary injunction must be denied. *Id.* If, however, the moving party satisfies this initial threshold, the court proceeds to the balancing phase, in which the moving party must demonstrate that the harm that would be caused without an injunction outweighs the harm that would be suffered by the nonmoving party in the event the injunction is granted. *Id.*

"The essence of a temporary restraining order is its brevity, its ex parte character, and . . . its informality." *Geneva Assurance Syndicate, Inc. v. Med. Emergency Servs. Assocs.*, 964 F.2d 599, 600 (7th Cir. 1992). "Given the emergency nature of such relief, a relaxed evidentiary

standard is appropriate." *Democratic National Committee v. Bostelmann*, No. 20-CV-249, 2020 WL 1320819, *4 (W.D. Wisc. March 20, 2020).

## I.     Plaintiffs' Request Disturbs the Status Quo, Does Not Comprise an Emergency, and Does Not Prevent Irreparable Harm.

"[A] preliminary injunction is a provisional remedy designed to preserve the status quo until the case can be heard upon the merits." *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958). "The status quo is the last uncontested status which preceded the pending controversy." *Id.*

In this case, the status quo is (1) the ongoing state of disaster in Illinois, as set forth in the Governor's proclamations of March 9, 2020 and April 2, 2020 (doc. 1 ¶¶ 34, 36), (2) the accompanying Executive Orders 2020-10 and 2020-18, which required Illinois residents to stay at home under many circumstances, and did not identify religious services as an "essential business" (doc. 1 ¶ 38), (3) the most recent Executive Order 2020-32, which extended Orders 2020-10 and 2020-18 but with additional flexibility afforded to religious services as "essential businesses," and (4) compliance of those Executive Orders by the Plaintiffs starting March 31, 2020 and lasting through today (doc. 1 ¶ 50). From March 31 until April 30—a full 30 days— the Plaintiffs complied with the Executive Orders and held remote services on Facebook Live and YouTube. Plaintiffs seek to change the status quo with a TRO that authorizes them to pack a church with 80 worshipers, absent any consideration to the Executive Order, the Illinois Public Health Act, or even the CDC recommended guidelines.

The emergency nature of Plaintiffs' proposed relief is also undermined by the demonstrated ability of Pastor Cassell to hold service via streaming services, and Plaintiffs' failure to challenge Executive Order 2020-10 or Executive Order 2020-18 (which continued Executive Order 2020-10) over the 30 days that Pastor Cassell was holding service exclusively

via streaming service. Further, Plaintiffs did not file this lawsuit when the draft Executive Order 2020-32 was released on April 24, 2020. Instead, after a full month of compliance with the Executive Orders, Plaintiffs filed this lawsuit and Motion for TRO less than two business days before their next scheduled Sunday service.

Plaintiffs were capable of holding service exclusively via streaming service on April 5, April 12 (Easter), April 19, and April 26. Plaintiffs held services online prior to those dates on March 1, March 8, March 15, March 22, and March 29. On April 26, Pastor Cassell stated that he will continue to hold services online, even after his congregation is allowed to meet in person, so that people in other states and countries can receive his message. Plaintiffs' continued provision of online services will not cause any tangible "irreparable harm," and none has been pled.

## II. Plaintiffs Are Unlikely to Succeed on the Merits Against Sheriff Snyders and Administrator Beintema Because Their Claims Are Not Ripe.

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotes omitted). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id*. (internal quotes omitted) (emphasis in original). The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Id*. (quotes omitted) (emphasis in original). *See Construction and Gen. Laborers Union No. 330 v. Town of Grand Chute*, 915 F.3d 1120, 1127 (7th Cir. 2019) (finding that

potential enforcement of a town ordinance potentially prohibiting aspects of union protest, which had not yet taken place, was not ripe).

In this case, the Plaintiffs request an order enjoining Sheriff Snyders and Administrator Beintema from "applying EOs 2020-10 and 2020-18, and the announced upcoming executive order, against Plaintiffs' church services and religious gatherings and ministries[.]" (Doc. 7 at 15.) Plaintiffs filed their motion "[t]o stave off arrest and prosecution for the exercise of their fundamental liberties[.]" (Doc. 7 at 1.) But arrest and prosecution are not "certainly impending" from either Sheriff Snyders or Administrator Beintema, and these claims are not ripe.

**A.    The Claims Against Sheriff Snyders Are Not Ripe.**

Plaintiffs do not allege that Sheriff Snyders or his deputies made any threat of enforcement at any time, nor could they. The only allegation against the Sheriff is that his deputy served the Cease and Desist Notice for the County's Health Department over a month ago, which is a ministerial task for the Sheriff's Department. (Doc. 1 ¶ 48.) Plaintiffs do not allege any contact with the Sheriff since March 31. Further, as represented in this brief, the Sheriff and his deputies do not intend to enforce Executive Order 2020-32 against the Beloved Church this Sunday, May 3. There is no threat of "certainly impending injury" from the Sheriff, particularly where the services have not even occurred yet. *Construction and Gen. Laborers Union No. 330*, 915 F.3d at 1127. If fewer than 10 people show up on Sunday, then Plaintiffs' services might comply with the Executive Order 2020-32. This contingency renders the claims against the Sheriff unripe.

**B.      The Claims Against Administrator Beintema are Not Ripe.**

Similarly, as also represented in this brief, Administrator Beintema will not take any

action to enforce Executive Order 2020-32 or the Cease and Desist Notice against the Plaintiffs

on May 3.  He does he even have the authority to do so.

Plaintiffs misinterpret the Cease and Desist Notice as an "order," which it is not.  The

Cease and Desist Notice was just that—a notice—which advised Plaintiffs that noncompliance

with the Executive Orders could be grounds for a closure order from IDPH under the Illinois

Department of Public Health Act ("Public Health Act"), 20 ILCS 2305/2(b) and (c).

Section 2(b) of the Public Health Act authorizes IDPH to "order a place to be closed and

made off limits to the public to prevent the probable spread of a dangerously contagious or

infectious disease . . . until such time as the condition can be corrected or the danger to the public

health eliminated or reduced in such a manner that no substantial danger to the public's health

any longer exists."  20 ILCS 2305/2(b).  The IDPH has the authority to "order a place to be

closed and made off limits to the public on an immediate basis without prior consent or court

order if, in the reasonable judgment of the [IDPH], immediate action is required to protect the

public from a dangerously contagious or infectious disease."   20 ILCS 2305/2(c).  The Public

Health Act then provides, "In the event of an immediate order issued without prior consent or

court order, the Department shall, as soon as practical, within 48 hours after issuing the order,

obtain the consent of the person or owner or file a petition requesting a court order authorizing

the . . . closure." 20 ILCS 2305/2(c).

The Cease and Desist Notice expressly cites to the Public Health Act, 20 ILCS 2305/2(b)

and (c).  (Doc. 1, Ex. C.)  Its authority arises from the Public Health Act, not from the Executive

Order (although the findings in the Executive Order could also support a finding by the IDPH

12

that large gatherings of individuals refusing to practice social distancing guidelines presents a "probable spread of a dangerously contagious or infections disease," thereby triggering the IDPH's authority to issue a closure order under § 2(b) and (c).)  The Cease and Desist Notice did not purport to be a "closure order" issued by the Stephenson County Health Department. Although the Stephenson County Health Department may have also had the authority to issue a "closure order" under 20 ILCS 2305/2(c) and 20 ILCS 2310/2310-15 (delegating enforcement authority to certified local health departments), the County Health Department's Cease and Desist Notice specifically defers to and warns that the *IDPH* has the authority to close the Church; it does not warn that the County Health Department will take any action.  Even if it could have been interpreted at the time as a "closure order," it expired by the terms of 20 ILCS 2305/2(c)—a statute that it specifically cites—48 hours after it was issued.  Thus, the Cease and Desist Notice did not present at the time, and does not present now, an impending threat of injury by the Stephenson County Health Department or Administrator Beintema.

Plaintiffs' Memorandum in Support of Their Request for Temporary Restraining Order and Preliminary Injunction is almost entirely directed at the constitutionality of the Executive Order.  (Doc. 7 at 6–14.)  The relief that Plaintiffs request is an injunction of the applicability of the Executive Orders.  (Doc. 7 at 15.)  The only sentence directed against the Stephenson County Defendants in Plaintiffs' entire Memorandum is the following:  "It is only by operation of these *extended* emergency powers that the Stephenson County Defendants continue to claim the 'Cease and Desist Notice' served on plaintiffs remains in effect, and to claim the authority to enforce the provision of EO 2020-10 against Plaintiffs."  (Doc. 7 at 13.) (emphasis in original). This statement is not supported by any allegation in the Complaint.  There are no allegations in the Complaint that the Stephenson County Defendants (either Sheriff Snyders or Administrator

Beintema) "continue to claim the 'Cease and Desist Notice' served on plaintiffs remains in effect," nor could there be. The Cease and Desist Notice was expressly premised on the Public Health Act—as it must be—and the Public Health Act does not authorize indefinite closures absent consent or court order. Plaintiffs cannot justifiably believe that the Cease and Desist Notice was an "order" or that it was continued indefinitely to require closure of the Beloved Church. No new "Cease and Desist" notices or orders have been issued by the County Health Department.

Plaintiffs cannot request that this court enjoin Administrator Beintema from enforcing any Executive Order or the Cease and Desist Notice because there is no certainly impending threat that Administrator Beintema will enforce either—because he cannot. Without an impending injury, the claims against Administrator Beintema are not ripe.

**III.    Plaintiffs' Memorandum Concedes that IDPH Has Authority to Close the Church.**

Plaintiffs Memorandum targets the enforceability and constitutionality of the Executive Orders, and the Governor's authority to close the church. That is essentially the only relief that they request. The Stephenson County Defendants defer to the Attorney General's Office on that issue (including the interpretation of "drive-in services"). (See doc. 16.)

Plaintiffs do not argue that the Public Health Act is unconstitutional. In fact, Plaintiffs argue that the Governor lacks authority under IEMA to close the church *because* the Public Health Act "provides the exclusive remedy for quarantine and isolation and closures, along with ensuring the due process rights of those who are subject to such measures." (Doc. 7 at 13.)

As set forth above, Administrator Beintema's authority comes from the Public Health Act, not the Executive Orders. It was precisely this authority of which the Cease and Desist Notice warned the Plaintiffs, and subject to this authority that the County Health Department

14

could have acted (but did not).  20 ILCS 2310/2310-15.  Plaintiffs do not challenge this authority, and so their request for a temporary restraining order against Administrator Beintema should be denied.

## IV. Equities and Public Policy Balance in Favor of Suppressing the COVID-19 Outbreak.

With the filing of the newest Executive Order 2020-32, the limitations on religious expression have been relaxed.  Religious worship may take place consistent with Executive Order 2020-32 in groups of fewer than 10, or via online streaming, or at drive-in sermons. However, Plaintiffs flaunt these guidelines.  Pastor Cassell has ministered on the "Covid Lie," and has instructed his congregation to appear live at church, hand to hand, cheek to cheek.  He has proclaimed that he will not be bound by any government system.  His leadership during this pandemic is placing the congregation in danger of outbreak. Given the risk associated with large gatherings such as the one described in the pleadings, public policy interests weigh against writing the Beloved Church a free pass without so much as an evidentiary hearing.

The hardship to the Plaintiffs is relatively small; it is a hardship that many organizations bear right now.  Remote services are not ideal, but Plaintiffs can, and will, minister via online live stream as they have been doing for two months.  An additional week or two, or three, of online sermons will not cause so great a burden as to jeopardize the church (at least, that has not been pled).

## CONCLUSION

Defendants Stephenson County Sheriff Snyders and Stephenson County Public Health Department Administrator Beintema request that this court deny Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, and for any further relief this court deems appropriate.

**DAVID SNYDERS and CRAIG BEINTEMA**

*/s/Benjamin M. Jacobi*
One of their attorneys

Benjamin M. Jacobi, #6296811
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, #475
Northbrook, Illinois 60062
T: 847-291-0200
F: 847-291-9230
bjacobi@okgc.com

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

THE BELOVED CHURCH, an Illinois Not-for- )
Profit Corporation, and PASTOR STEPHEN )
CASSELL, an individual, )
                                                 )
        Plaintiffs, )        Case No. 20-CV-50153
                                                 )        Honorable Judge Lee
v. )
                                                   )
JAY ROBERT PRITZKER, Governor of the State )
of Illinois, DAVID SNYDERS, Sheriff of )
Stephenson County, Illinois, STEVE SCHAIBLE, )
Chief of Police of the Village of Lena, Illinois, and )
CRAIG BEINTEMA, Administrator of the )
Department of Public Health of Stephenson )
County, Illinois, in their official capacities, )
                                                 )
        Defendants. )

## CERTIFICATE OF SERVICE

        I hereby certify that on May 1, 2020, I served ***Defendant Sheriff Snyders and Administrator Beintema's Response to Plaintiffs' Motion for TRO and Preliminary Injunction*** by filing same with the CM/ECF system, which shall provide electronic notice to the following counsel of record:

Peter Breen
pbreen@thomasmoresociety.org

Martin Whittaker
privaterecht@gmail.com

Christopher Wells
cwells@atg.state.il.us

Dominick Lanzito
dlanzito@pjmchicago.com

**DAVID SNYDERS and CRAIG
BEINTEMA**

*/s/Benjamin M. Jacobi*
Attorney for Defendant
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Facsimile: (847) 291-9230

18